UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVE PEARO, | : | Case No. 1:13-cv-344 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| HANSEN & ADKINS AUTO | : | |
| TRANSPORT, INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Doc. 35)**

This civil action is before the Court on Defendant's motion for summary judgment (Doc. 35) and the parties' responsive memoranda (Docs. 39, 42).

## I.  BACKGROUND

Plaintiff Dave Pearo alleges that Defendant Hansen & Adkins Auto Transport, Inc. ("Defendant" or "Hansen") discriminated against him because of his age when it declined to hire him for an auto hauler position in 2012.  To evidence discriminatory animus, Plaintiff relies on statements allegedly made by Barry Williams, Hansen's Vice President of Operations, to Tim Mast, Hansen's Cincinnati Terminal Manager.  Defendant denies that such statements were made, and argues that it hired objectively more qualified applicants who were not substantially younger than Plaintiff for the position.

1

## II.     UNDISPUTED FACTS[1]

1. Plaintiff was born on September 16, 1951, and therefore was sixty-one years old when he applied for the auto hauler position at Hansen. (*See* Doc. 14 at ¶ 7).

2. Plaintiff had some auto haul experience prior to his application with Hansen. (*See* Doc. 33 at 32-33).

3. Hansen utilizes a nine-car open trailer with a head rack. (*Id.* at 34).[2]

4. Plaintiff has no experience operating a nine-car auto hauler with a head rack. (*Id.* at 34-35).

5. Plaintiff would need to be trained on the Hansen equipment before he started work. (*Id.* at 42).

6. Phillip A. Middleton was fifty-five years old at the time he applied for the position with Hansen in October 2012. (*See* Doc. 35-2 at 1).

7. Middleton informed Hansen that he had approximately ten years of experience in car haul from October 1998 to May 2007. (*Id.* at 2).

8. Middleton informed Hansen that he had over 900,000 miles of car haul experience. (*Id.*)

9. Prior to working with Hansen, Middleton told Hansen that he had worked at Active Transport. (*Id.* at 3).

10. Active Transport utilizes the same type of equipment as Hansen. (Doc. 26 at 108).

11. Prior to working with Hansen, Middleton also worked with Allied Systems. (Doc. 35-2 at 3).

12. Allied Systems utilizes the same car haul equipment as Hansen. (Doc. 26 at 109; Doc. 33 at 100).

13. Middleton was only six years younger than Plaintiff. (Doc. 33 at 98, 103).

---

[1] *See* Docs. 36 and 41. Plaintiff admits "Undisputed Facts" 6–18 but maintains that they are irrelevant to the issues presented. (Doc. 41 at 2-3). Where the page number that appears within deposition transcript differs from the page number assigned by the CM-ECF system, the Court uses the page number that appears within the deposition transcript.

[2] A head rack is a spot on top of the trailer for an extra vehicle. (*See* Doc. 33 at 34).

14. Myron D. Reynolds was above the protected class age of forty at the time Hansen hired him as an auto haul driver. (*See* Doc. 35-4 at 1).

15. Hansen hired Reynolds in the Cincinnati facility in late October 2012, at which time he about fifty years old. (*Id.*)

16. Reynolds told Hansen that he had over 1.3 million miles in the auto hauling industry. (*Id.* at 4; *see also* Doc. 33 at 92-93).

17. Reynolds did not have to undergo Hansen's training process because of his prior experience. (Doc. 26 at 58).

18. Reynolds had operated the same equipment used by Hansen because he came from a company that did work at Hansen's ramp and he transitioned over. (*Id.* at 57-58).

19. The position of auto hauler for Hansen is physically demanding. (*Id.*)

20. If an applicant is already familiar with the job and equipment, it makes the start-up process easier on the company. (*Id.* at 54).

21. Training for new employees lasts for a period of approximately three weeks. (*Id.* at 55).

22. If Hansen would have hired Plaintiff, he would have had to go through the training process. (*See id.* at 56, 66; Doc. 33 at 42).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

Plaintiff brings his age discrimination claim pursuant to Ohio Revised Code ("O.R.C.") § 4112.99. (*See* Docs. 14, 20).[3] Ohio courts look to federal case law when they consider claims of employment discrimination brought under Ohio law. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d 175, ¶ 15, 2004-Ohio-723, 803 N.E.2d 781. Courts use the same standards to analyze age-discrimination claims brought under Ohio law and age-discrimination claims brought under the federal Age Discrimination in Employment Act ("ADEA"). *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).

To prove age discrimination under the ADEA, a plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). Direct evidence is evidence which, if believed, would require

---

[3] Section 4112.99 provides that "[w]hoever violates [Chapter 4112] is subject to a civil action for damages, injunctive relief, or any other appropriate relief." Section 4112.02(A) establishes the basic prohibition against age discrimination: "It shall be an unlawful employment practice . . . for any employer, because of the . . . age . . . of any person, to discharge without just cause . . . or otherwise to discriminate against that person with respect to . . . tenure, terms, conditions, or privileges of employment[.]" Section 4112.14 sets forth the relevant protected class: "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."

4

the conclusion that age was the but-for cause of the employment decision.[4] *Bartlett v. Gates,* 421 F. App'x 485, 488–89 (6th Cir. 2010). On the other hand, indirect or circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler,* 317 F.3d at 570.

### A. Direct Evidence of Discrimination

Plaintiff argues that statements made by Barry Williams, Hansen's Vice President of Operations, to Tim Mast, Hansen's Cincinnati Terminal Manager, constitute direct evidence of age discrimination. Because Plaintiff opposes summary judgment, the Court accepts his factual evidence as true and, therefore, proceeds as if Williams made the statements Plaintiff attributes to him.

In October 2012, Plaintiff interviewed for a position at Hansen with Mast. (Doc. 33 at 53-56). Mast forwarded Plaintiff's application to Williams for approval after the interview. (Doc. 26 at 62-63). Subsequently, when Mast asked Williams about the status of approval for Plaintiff's application, Williams responded, "[W]ho, that old ass man you sent his application to us?" (*Id.* at 72). Williams then asked Mast if he didn't "give a

---

[4] Prior to *Gross*, courts defined direct evidence as evidence which, if believed, would require the conclusion that unlawful discrimination was *at least a motivating factor* in the decision. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003); *Mauzy v. Kelly Services, Inc.*, 75 Ohio St. 3d 578, 586-87, 664 N.E.2d 1272 (1996) (Direct evidence shows "the employer more likely than not was motivated by discriminatory animus."). Following *Gross*, the Sixth Circuit has observed: "it seems that plaintiffs must prove by a preponderance of the evidence . . . that age was the but-for cause of the challenged employer decision to prevail on direct evidence at the summary judgment stage." *Bartlett*, 421 F. App'x at 488-89. *But see Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 330 (6th Cir. 2012) (employing the "motivating factor" language set forth in *Wexler*, although decided after *Gross*).

fuck about the company" and said that Plaintiff was a "Workmen's Comp case waiting to happen." (*Id.*)[5]

Shortly after that conversation, Mast received a call from Tim Shorter, a terminal manager who was based in Georgia. (Doc. 26 at 81; *see also* Doc. 31 at 8, 11). Shorter said that he would be at the Cincinnati terminal on Monday and instructed Mast to gather the applications of anyone Mast felt was being turned away because of age. (Doc. 26 at 81). Mast felt that Shorter's arrival in Cincinnati was in response to the heated phone call Mast had with Williams and was a "CYA" measure. (*Id.* at 82-84).

Shorter conducted a second interview with Plaintiff in Cincinnati. (Doc. 26 at 73-74; Doc. 31 at 28-29; Doc. 33 at 65-66). Mast did not sit in on this interview but discussed it afterward with Shorter, who said Plaintiff seemed okay. (Doc. 26 at 86). Mast thought Shorter was going to recommend to Williams that Plaintiff be hired. (*Id.*) Plaintiff left the interview with Shorter in high spirits and believed he would be hired by Defendant. (Doc. 33 at 75). Subsequently, Mast called Plaintiff and told him that that

---

[5] Mast's terminal was going through a difficult period, and the regional manager, Will Cartwright, was on vacation. (*Id.*) Mast became upset, left early for the day, and told his dispatcher to participate in the mandatory weekly conference with Williams. (*Id.* at 70-71). Mast received a very early call the next morning from Williams wherein "it got a little bit heated" and Williams purportedly made the statements at issue. (*Id.* at 72). Mast recalled that he was under constant pressure to get vehicles from the terminal to the dealerships, even though he was understaffed and often had mechanical issues with his fleet and, at one point, the Cincinnati terminal was placed on probation with General Motors because of aging vehicles. (*Id.* at 24-27, 31, 70).

Defendant wasn't hiring at that time. (Doc. 33 at 78).[6]

"Direct evidence . . . proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Systems, Inc.,* 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted). "Any discriminatory statements must come from decision makers to constitute evidence of discrimination. Statements by nondecision makers, or statements by decision makers unrelated to the decisional process itself[,] cannot suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Geiger,* 579 F.3d at 620-21 (internal citations and quotations omitted).

Courts evaluate whether allegedly discriminatory remarks constitute direct evidence by considering four factors:

> (1) whether the statements were made by a decision maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Diebel v. L & H Resources, LLC,* 492 F. App'x 523, 527 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 478 (6th Cir. 2002)). The court evaluates the factors are as a whole; no single factor is dispositive. *Id.*

---

[6] Sometime later, Mast told Plaintiff that he had been fired for sticking up for Plaintiff. (*See id.* at 107). Mast relayed Williams's "old man" comment to Plaintiff and suggested that Plaintiff consult an attorney about age discrimination. (*Id.* at 76-77, 109-10; Doc. 26 at 94-95). Defendant notes its concerns about Mast's credibility. (*See* Doc. 42 at 10). Plaintiff relies *heavily* (and almost exclusively) on Mast's testimony. However, determinations regarding credibility are within the purview of the jury. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.")

7

Given that Williams served at Hansen's vice president of operations and that Mast forwarded Plaintiff's application to Williams for approval, Plaintiff has presented evidence that Williams qualifies as a decision maker for the purposes of this inquiry.[7]

Defendant claims that Williams's statements were not related to the decision not to hire Plaintiff because that decision was made after Shorter interviewed Plaintiff and decided that there were more experienced candidates available for the Cincinnati terminal. (*See* Doc. 26 at 73, Doc. 31 at 36).[8] Defendant argues that to find that the Shorter interview was a "CYA" measure as Mast suggests (*see* Doc. 26 at 82-84), the Court would need to draw an inference with regard to Williams's motive or intent, because it is just as plausible that Williams decided to send Shorter to Cincinnati to

---

[7] Defendant argues that, because terminal managers and regional managers would pre-screen driver applicants before any final decisions were made, Shorter had full authority as the gatekeeper to reject Plaintiff as an applicant, even though he may not have had the final say with regard to whether Plaintiff was hired. Defendant claims that Williams was never involved in Plaintiff's application process because Shorter did not think Plaintiff was the right candidate due to his lack of experience and the presence of other qualified applicants. (*See* Doc. 31 at 36). Defendant cites *Clack v. Rock-Tenn Company,* 304 F. App'x 399, 405 (6th Cir. 2008) for the proposition that because Shorter was the actual decision maker and evaluated only permissible criteria, this is not a direct evidence case as a matter of law. In *Clack*, the Sixth Circuit upheld summary judgment in favor of the employer because a direct supervisor's racial animus could not be imputed to a manager who made the ultimate termination decision. Here, however, Williams was positioned to review the applications of individuals who had been interviewed and prescreened. (Doc. 26 at 28). Further, Mast forwarded Plaintiff's application to Williams for approval, and, given Williams's reference to Plaintiff's age, Williams must have given the application at least a cursory review before speaking with Mast about it. Accordingly, taking the evidence in the light most favorable to Plaintiff, the Court finds adequate support for the conclusion that Williams was a decision maker.

[8] Prior to the heated exchange with Williams, Mast had discussions with Shorter about Plaintiff's application. (Doc. 26 at 74). Only Plaintiff's qualifications to perform the job were discussed. (*See id.* at 73-74). Shorter explained the pre-screening process as follows: "[I] would review applications, find candidates that would, would fit what we are looking for as a driver. I would do interviews. If I deemed that somebody would be a good fit for our company based off of our interview process, I would forward that information along for approval." (Doc. 31 at 11). Shorter was involved in the approval process for new applicants in the startup locations, such as Cincinnati. (*Id.* at 16-17). Shorter did not forward Plaintiff's information to Williams after his interview. (*Id.* at 37).

8

accurately and fairly evaluate the candidates.[9] However, Williams's statements were directed at Plaintiff, his age, and his application. (Doc. 26 at 72). While an inference may be required to determine whether the Shorter interview was a "CYA" measure, an inference is *not* required to determine that Williams's statements were related to the decision-making *process*.

The Court finds that Williams's statements were neither vague nor ambiguous.[10] The parties have provided the Court with conflicting evidence regarding whether the statements were isolated. Prior to Plaintiff's complaint, Hansen had neither been sued nor received complaints regarding discrimination during Williams's tenure. (Doc. 28 at 13-14; *see also* Doc. 42-2). Further, Mast had never previously heard Williams reference an applicant's age. (Doc. 26 at 84). However, according to Mast, other applicants were turned away because of their age, including an applicant from London, Kentucky, who was fifty-four or fifty-five years old. Mast testified that Will Cartwright, a regional

---

[9] Before the "heated" discussion with Williams, Shorter told Mast "we would have to meet with [Plaintiff]" and asked whether Will Cartwright had talked to Plaintiff. (Doc. 26 at 75). Mast understood that Shorter was going to make a recommendation to Williams. (*Id.* at 87).

[10] Defendant argues that one must improperly infer that the alleged comments were related to discriminatory animus, as opposed to a legitimate concern about Plaintiff's physical ability to perform the essential functions of the position. Had Plaintiff's application been approved, Plaintiff would have had to undergo an extensive physical examination prior to being formally hired. (Doc. 26 at 66-67; Doc. 33 at 56, 59-60). However, Plaintiff was never given a physical examination. (Doc. 26 at 66-67; Doc. 33 at 59-60). Because Williams had not met with Plaintiff, Williams could not have had actual knowledge of Plaintiff's physical ability to do the job. (*See* Doc. 26 at 148). Defendant also argues that the fact that because Williams is roughly the same age as Plaintiff, any possible inference of discrimination is weakened. This will be for the jury to determine.

9

manager, told him that they needed to keep drivers under a certain age and that the London applicant was "probably too old, that Barry [Williams] won't approve him." (*Id.*) [11] The Court finds that, viewing the evidence in the light most favorable to Plaintiff, Cartwright's remark provides evidence that Williams's statement was not isolated.

Finally, given that the statements occurred after Plaintiff applied for the position but before he was told that he would not be hired, the Court finds that the statements were sufficiently proximate in time to the adverse employment decision to constitute direct evidence.

The facts of the instant case are similar to those presented in *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112 (6th Cir. 2007). In *Coburn*, a supervisor told a laid-off employee who was being escorted from the building that the director was "tired of letting go young talented engineers" and that he was going to go after older employees. *Id.* at 116. The Sixth Circuit found that summary judgment was precluded in this action for age discrimination brought under Ohio law, because Plaintiff's direct evidence

---

[11] Defendant contends that courts routinely reject "me too" evidence as sufficient to overcome summary judgment. However, the cases cited by Defendant stand for the propositions that "me too" evidence cannot carry a plaintiff's burden to establish pretext, *Megivern v. Glacier Hills Inc.*, No. 11-10026, 2012 WL 529977 (E.D. Mich. Feb. 17, 2012) *aff'd*, 519 F. App'x 385 (6th Cir. 2013); and, moreover, the cases reflect that trial courts regularly prohibit "me too" evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial, but only slightly relevant, *Reed v. Nat'l Linen Serv.*, 182 F.3d 918 (6th Cir. 1999); *Schrand v. Fed. Pac. Electric Co.*, 851 F.2d 152, 156 (6th Cir. 1988). Defendant argues that because an inference is required to make that connection between Plaintiff's "me too" evidence to impermissible age-based animus, that evidence is improper in the direct evidence analysis. However, the Court finds it appropriate to consider, at minimum, Cartwright's remark in determining whether the Williams's statements were "isolated." *See Coburn*, 238 F. App'x at 117-118 (finding that a prior remark that the company should look "young and aggressive" sufficed to show that the age-based comments at issue were not isolated).

established a *prima facie* case and genuine issues of material fact existed as to whether the employer's stated reasons for including an employee in a reduction in force layoff ("RIF") were pretexts for age discrimination.[12]

The Court is mindful that the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 153 (2000). The Court neither finds that Williams was a "rampant ageist" nor that Plaintiff is certain to prevail at trial.[13] Instead, the Court finds that, if Williams actually made the statements attributed to him by Mast, a jury could take those statements alone as proof of "the existence of a fact [discriminatory motive] without requiring any inferences." *Rowan*, 360 F.3d at 548. Taking the evidence in the light most favorable to Plaintiff, as the Court must at this stage in the proceedings, and considering the four factors in aggregate, the Court finds that a reasonable juror could find that Williams's statements require the conclusion that Plaintiff was not hired because of his age.

---

[12] Defendant argues that *Coburn* is of little precedential value because it was decided before *Gross* and pursuant to the "mixed motive" burden-shifting analysis for direct evidence cases. Defendant also argues that the case is distinguishable from the instant case, in which even after the alleged comments, Plaintiff had an interview with Shorter, who recommended that he not be hired. However, none of this detracts from the fact that Williams's statements were in reference to Plaintiff, his age, and his application for employment.

[13] The Court notes that, while there appears to be some dispute as to the number of positions Defendant hoped to fill at the time Plaintiff's application was rejected, Defendant has strong evidence that two applicants with strong qualifications were hired around the same time Plaintiff applied. Thus, while Plaintiff has avoided summary judgment in favor of Defendant, Plaintiff will face this evidence at trial.

### B. Direct Evidence of Discrimination

Because Plaintiff provided sufficient direct evidence that age was the but-for cause of Defendant's decision not to hire Plaintiff, the Court need not consider whether Plaintiff could also satisfy the *McDonnell-Douglas* burden shifting analysis for indirect or circumstantial evidence.

### V. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment (Doc. 35) is **DENIED**.

**IT IS SO ORDERED**.

Date:  3/30/2015                                                                                    *s/ Timothy S. Black*
                                                                                                              Timothy S. Black
                                                                                                              United States District Judge